13-4188 United States of America v. Joshua Stafford Thank you. No problem. Please proceed. Thank you, your honors. I think I'll do a better job arguing this case than the other one. Thank you, Judge Rogers, and may it please the court, my name is Brody Butland, I'm here on behalf of defendant appellant Joshua Stafford, and at this time I'd like to request two minutes for rebuttal. Your honors, the criminal justice system is based upon two principles. Number one, that a criminal defendant is not only entitled to a fair trial, but the appearance of a fair trial to citizen observers. And this was violated when Mr. Stafford, who had a 20-year history of untreated mental illness, was permitted to represent himself as a criminal defendant before a very experienced and able United States attorney. And second... Your point is he should have been denied that opportunity. That is correct, Judge Cogg. Okay. Does that not have some mischief in it, too? Denying the right of self-representation? Your honor, you are correct that there is a right to represent oneself as recognized in the United States I believe in the Euphoretta case. But I think that we have to look at two sets of precedents. Number one is Indiana v. Edwards. In Indiana v. Edwards, the court said that there are two levels of competency. There is the competency to merely stand trial, and there is the competency to represent oneself, and the court held for the first time that one is higher. Now this court has taken that precedent very seriously. In United States v. Gabrion, United States v. Back, United States v. Ross, and then just on December 18th of this past year, United States v. Gooch. This court has taken the Supreme Court at its word and said that there are indeed two levels of competency. Now this court has gone further than the other circuits to interpret that precedent. It has gone further than the 7th, the 8th, and the 10th, which have not said unequivocally that there are always two levels of competency. So if we're going to take this precedent seriously, and if we truly believe that there are two levels of competence, then that means there must be circumstances where a defendant who satisfies the competency standard to stand trial can be denied the right to represent himself at trial. And the 11th Circuit has already... I think the law is clear that they can be denied it and counsel imposed on them. The question here is whether they have a right to it when they've argued against it. Is that different? I mean, you could have that. Everything you say could be right and you could still lose today is what I'm saying. Isn't that true? You could say there's a different standard. It's possible that the judge can say you're not capable of giving yourself effective representation and therefore we're imposing counsel on you, and that that's okay under the Feretta right. And all of the things you've been citing support that, but they don't compel the conclusion that a judge has to do that. I would submit, Your Honor, that it actually does now that Indiana v. Edwards... How does it do that? Well, first of all, if we look at the 11th Circuit precedents, and in particular Posadas-Aguilera, the 7th, 8th, and 10th Circuits have said exactly as you did, that it's just a permissive right, as in the court can say, you know what, I don't believe that you're competent to represent yourself. I'm going to require you to have counsel. But in this case... It's clear that that's the law, right? Absolutely, Your Honor. That clearly is the law. But the question presented by this case, which has only been addressed to my knowledge by the 11th Circuit in this context, is if the district court allows the defendant to have counsel, or I'm sorry, if the defendant allows the defendant to proceed pro se, then is that a reversible error in this case? And Posadas-Aguilera indicated that it can be if you have a... I'm sorry? You're basing that upon the 11th Circuit case, which was unpublished and it was kind of in a footnote, right? I mean, it's kind of shaky for precedents for us to follow, right? Well, it is an unpublished case, although the 11th Circuit in a published case, United States v. Gary, said a very similar thing. But aside from that, I would say that with this court's precedents, that actually did say unequivocally that there are two levels of competency, which is like two levels of competency and have either rule as to whether a judge is required to deny, to grant, to impose counsel. You could have two levels of competency and therefore a judge is permitted to impose counsel,  and therefore a judge is required to impose counsel in some circumstances. That's correct. The two levels could support either rule. So it doesn't necessarily support the rule that you're advocating. It could also be used to support the rule that makes it permissive rather than mandatory.  Yeah, that is true, Your Honor. And the 7th, 8th, and 10th Circuits have held exactly that. Do you have some argument for why it makes sense, apart from the fact that there's two levels, which is as consistent with rejecting your argument as with accepting your argument? Do you have other arguments for why we should accept your argument? Yes, Your Honor. I think if we take the Indiana v. Edwards rule seriously, if we truly believe that somebody can be competent to stand trial but cannot be competent to actually carry out the tasks that are necessary to represent himself at trial, if we truly believe that one standard is higher than the other, then if a defendant is below that level, he simply isn't receiving a constitutionally protected right of representation. You would have district courts have the level of expertise in mental health to make that assessment as a matter of law? Judge Cook, I think they already do. In fact, if we look at this case, Judge Dow did have to examine psychological evidence, and he did have to make a determination as to whether he thought... But he evaluated that. He evaluated it. Does that make it his discretion? He does. I do believe he is entitled to a presumption of correctness, what we would normally call a clearly erroneous standard of use of discretion, with respect to his factual findings. But I think in this case, he simply got it wrong. And I would point this court to page 100. Primarily, I think, Mr. Butler, the feature of the case where you think Judge Dow did not clearly evidence his interest in the two levels. I think that's part of it, although I don't think that we... Is there more than that? Well, I think it is more than that. If we look at Edwards on page 176, Edwards specifically identified certain types of symptoms of mental illness that it considered relevant to the question. It talked about disorganized thinking, attention and concentration deficits, impaired expressive abilities, and anxiety. I'm not remembering whether or not the defendant in that case insisted, despite being advised otherwise, insisted that he be permitted to represent himself. He did try to represent himself several times. You say these were analogous in that regard? I think they are analogous in that regard, certainly, Your Honor. I think that in this case... The level of insistence. Yeah, Mr. Stafford did insist on representing himself. I think in Edwards, that criminal defendant insisted on representing himself. As his lawyer, are you for representing himself in Edwards? That seems a significant factor to me in this case. In terms of, and I believe this goes to the, I guess we call it either the waiver or the invited error doctrine. Well, you can call it waiver or you can call it invited error or you can make it part of the analysis. We're sort of out in new ground here, where we're talking about imposing a counsel over the objection of the defendant. But here, it's not only over the objection of the defendant, but it's against the argument of his counsel, who's not incompetent at all, presumably, right? And who is asking for this person to be able to represent himself. That is true, Your Honor, but just because a counsel has agreed has never stopped this court in the past from actually looking at the merits. If we look at... Agreed, but if they're asking for it, it opens up the possibility of sandbagging. If they come in, they say, well, we've got a great thing here. We'll insist on letting him represent himself and then we'll have reversible error because he's not able to represent himself. So you've got a sort of reversal if we do and reversal if we don't kind of possibility there, which is a little bit inconsistent with how courts should be run, isn't it? Well, and Your Honor, I would submit that the exact same problem could have come up in the United States via Abdulmutallab as well that this court dealt with, more informally known as the underwear bomber. In that case, both the defendant and his counsel said that they believed he was capable of representing himself. And this court, instead of simply saying that there was an invited error or a waiver, actually addressed the issue on the merits and simply... What did we hold? I'm sorry? We held that what? What did the court do in that case? Ultimately, the court held that he was mentally competent to represent himself. You admit that your client was mentally competent to stand trial, right? Yes. I don't think there's any dispute about that, Your Honor. You're saying that the court needs to take a second step up in all cases in which a person has some sign of mental illness in the past? I think that there's a sign of serious mental illness. And one of the uncontested findings in this case was that Mr. Stafford suffered from serious mental illness. The district court acknowledged that. There was uncontested testimony by both experts as to that. If I may... The gray area, as I understand it just definitionally, is where he's competent to represent himself, but at least he contends that he's incompetent to or that he's able to... What is the gray area? The gray area would be, and the Supreme Court uses it, I believe, as a term of art for somebody who satisfies the relatively low threshold for competency, but there are serious questions as to whether they meet the higher standard. Why shouldn't, in the gray area, a district judge have great discretion to determine whether to impose counsel in that case or not? Because I think it goes to fundamental rights in the system. People are entitled to a right to counsel and to adequate representation, whether they provide that representation. Do you agree that in some of those cases the judge should impose counsel and in other cases it should not? Is that correct? I agree, Your Honor. And if that's true, then the court system has to decide. Wouldn't it be better to have the district court making that decision than the court of appeals? And as a first matter, I agree that in general the district court should be... Yeah, I agree, Your Honor. Are you just saying this is an abuse of discretion in making that determination upon the part of the judge? Yes, Your Honor. Yes, Your Honor. And are there cases that have found that kind of abuse of discretion? No, Your Honor. This would be... So assuming that the abuse of discretion standard in this context can be strictly employed or loosely employed, however you want to call it, we have no precedent which saying such a decision was an abuse of discretion. Your Honor... That would suggest that maybe we ought to tread with a little care before we say there was an abuse of discretion here, wouldn't it? I do think that you are correct. This would be the first time that somebody has held that counsel must be imposed over a district court's ruling. But I think the rules are already out there. The Eleventh Circuit's already taken the step to impose the rule. It just hasn't found a factual situation to apply it to. And I'd say the same thing for the Sixth Circuit as well. The Sixth Circuit has precedents that suggest and come very close to saying that this should be the rule. And I'm just asking for the next step. I see my time is up. I will discuss further on rebuttal. Thank you, Your Honor. Good morning, Your Honors. Duncan Brown for the United States. May it please the Court. Your Honors, in this case, I think... I'd first thank Mr. Butlin for calling me Experienced Counsel. I think, however, the focus in this case would be the vast experience of Judge Dowd.  is the most experienced judge in the United States. I think, as the Court pointed out, does go to his discretion to interpret and apply Indiana v. Edwards. And I think in this case, both on the record and in a memo that his chambers had prepared and sent to both defense counsel and the government, that interpretation and application was not only done, but done properly and in the spirit and the letter of Indiana v. Edwards. I take that argument. I want to step back a minute, though. What if the case were different and the judge had abused his discretion or made an irrational determination or one that couldn't be supported by the reasoning that the judge used? In that case, could we reverse and say... reverse the conviction on that ground? Your Honor, I'm not sure about that sort of case because in this case we had the testimony... You're not taking that position, though? No, Your Honor, I'm taking the position that in this case there were two mental health experts who testified. I just want to make it clear. So you're just arguing there was no abuse of discretion, not that there couldn't be an abuse of discretion? That's correct, Your Honor. Because, again, Indiana v. Edwards just says that there is no... and these are Judge Dowd's words... whether there is an obligation to appoint counsel or to overrule. So you think we could rule in your favor without ruling that any case in this procedural posture would have to be affirmed? Correct. There might be some case where there was an abuse of discretion to grant the motion to go pro se even though the person was questionable. I think after review under a pro plain error standard, that in theory could happen. However, in this case where there were multiple hearings about this issue, there are memorandum written and, as I said, there are findings. Well, there are two mental health experts who testified. One was inconclusive. One said that he was confident to proceed and, in fact, give a very lengthy... I hesitate to call it a diagnosis, but an assessment of Mr. Stafford that far exceeded the sort of threshold of what a serious mental illness would be. Dr. McPherson explained why he was, in fact, confident that he could explain the law and understand the law. And, in fact, in the May 21st hearing, which is the second hearing Judge Dowd held on this issue, Judge Dowd went through a very thorough question and answer with Mr. Stafford where, in fact, to some of the answers about jury selection and voir dire, Judge Dowd said, you know, that is a very good answer and I think he even made the joke that that might be a better answer than even he could give. So, again, we're dealing and, again, practicing in front of Judge Dowd. I'm not sure that that's the case, but he was extremely thorough and, most importantly, extremely deliberate in this decision. What's your best case that the defendant sets, this Posada case from the 11th Circuit? What's your best case that you're relying upon here? Well, Your Honor, I would... Pardon me? Is it the Edwards case? Yes, Your Honor. It's the Edwards case as applied to this. And, again, also going back to, as we argued in our brief, this was not objected to by defense or defense counsel. This was, in fact, pursued by them. They raised the motion for the competency hearing and then the defendant raised this request to represent himself per se. So, again, I... You say even if that doesn't amount to a waiver, it could be part of the district judge's evaluation that the lawyer advocates this? Absolutely. And the lawyer did not make a passive argument in favor of his defendant's motion. And I don't have the site with me. It was about two or three pages long on May 21st where the defense counsel, a very experienced federal public defender, went through a number of reasons why he believed that, in this case, Mr. Stafford was, in fact, competent to represent himself. Notwithstanding all of those factors, Judge Stout still did appoint him to be sort of a shadow counselor, standby counsel during trial, with a second federal defender assisting as well. And they did. They provided very good representation to the defendant during trial. Go on to the other issue. Do you have further? Could you proceed to the other issue of terrorism? Yes, Your Honor. Thank you very much. And, Your Honors, the application of the terrorism enhancement, again, the government would argue, as established in the appeal of his co-defendants in U.S. v. Wright, the standard of review here is clear error. And the judge, Judge Stout, again, applied sort of a two-step analysis that was adopted by this court and affirmed in this court by U.S. v. Wright and initially was affirmed by this court in the United States v. Maui where a hearing was held to determine whether a terrorism enhancement applied, was appropriate and applied. During that time, there were briefs sought, evidence was taken during a hearing, and a decision on that application. There has to be evidence that the defendant intended to influence the government, is that true? Yes, Your Honor. If there were no such evidence, then we would reverse it. It's clearly erroneous. Is that right on a factual issue? Yes. There's evidence of that fact? There is evidence of that fact as affirmed in U.S. v. Wright who were not only co-defendants but, as this case was charged, co-conspirators. What's your best evidence that was put on to show that? Joshua Stafford repeatedly typed in the detonation code on one of the cell phone detonators the night that he planted one of the bombs at the base of the Route 82 bridge, the night that one of the co-conspirators looked at him and said, this is the greatest act of terrorism in Cleveland since the 60s, the same night that they talked about possibly going to Guantanamo Bay after they were caught because Guantanamo Bay is where you send political prisoners. Is that evidence that he's trying to influence the government or evidence that he'll be sort of a folk hero or something like that? Your Honor, this court has... It's not the same thing. We may be bound by this or that definition of terrorism, but we can't be bound by the defendant's definition. No, but this court has found that the invocation of the 1%, the invocation of going to Chicago the next day or a week later to protest at the G8 conferences and the NATO conferences, which is what all the co-conspirators were talking about that night. I think it's fair to say that the air was thick with anti-government and revolutionary talk that night. There was a little less of a tie between Stafford and that aspect. Well, Your Honor, he was in the van when these conversations were happening. He was talking and walking with the other co-conspirators when these conversations were occurring. And before that, before he walked seven miles that night, before he came onto the scene, Douglas Wright identified himself in Douglas Wright's own words as somebody he can trust, somebody who's up for revolutionary. Then he used an expletive. So the co-defendants identified him as somebody who was up for revolutionary behavior. And all of Mr. Stafford's actions the few days leading up to that and the night of certainly supported that assessment by his co-conspirators. Again, this is somebody... It has to be, in the thinking of the Court of Appeals, it has to be an amalgamation of the talk of terrorism and he's then just a listener with his detonating could be, as Judge Rogers suggests, just grandiosity, right? Well, Your Honor, he planted a bomb to blow up a bridge where cars were going to be going across, civilians were going to be going across. He did it callously and he did it within the context of all of these people who were talking about going to Guantanamo Bay, who were talking about acts of terrorism. That's my point. You need to have that in the context of all the other... Absolutely. And again, in this situation you do. In this context, there is no mistake. He didn't accidentally go to the bridge because he likes to see things blow up.  which he did, and repeatedly type in the codes because he likes to fiddle with cell phones. If the intent of the conspiracy was to do this, can it be transferred to this defendant or does he have to have his own independent intent? Your Honor, I think both arguments could be made. The way it was charged was as a conspiracy in part and certainly the acts and the intentions of the conspiracy are applied to the individual as they are to the whole, but I think the individual comments, a few days before that, Mr. Stafford was talking about using thermite, which in the presence of Mr. Wright, they then started talking about using it against police departments. I think there is ample evidence that he was certainly of a mind. And then when you take his physical actions that night, the marriage of the two, the actions and the comments, clearly show his intent and show why this application of the terrorism enhancement was appropriate. What if you have, just so I can figure out what the confines are of the definition, what if you have somebody who just seeks attention, you know there's attention seekers, like some of the people that assassinate presidents and so forth, they don't really care whether the president is a liberal or conservative, they just know they'll be famous if they assassinate him. Is that kind of intent enough for the terrorism enhancement? You're not really, well you know that you'll have some effect on government by blowing a building up or whatever, but your intent is not to interfere with the government, but rather to, assuming we can figure this out, your intent is just to become famous. Your Honor, again, in this case we have... I'm asking about the definition of the word, not what's going on in this case. What do you think the word means? Does the word include that, do you think, or not? Your Honor, I think if you're intentionally selecting a political target or a target of political value, there has to be an element of terrorism or politically motivated. What would happen if you could assassinate a federal judge because you're mad that they wouldn't let you marry his daughter or something? I don't know. Well, Your Honor, you're still affecting the government because... Well, Your Honor, the motivation for shooting the judge in this case, in this hypothetical... It would be personal. Well, but it would be because of his position or her position as a judge. No, no, I'm hypothesizing it's because of the position as a father. Oh, I was misunderstanding. Well, but then again you'd have to look at the words and the intent leading up to that crime and the actions leading up to that crime to infer intent. It can't be just that you're attacking a public... No, there would have to be words and other actions, which there are in this case, which there would be in that case. Again, it's again... Well, there might not be in that case. There may or may not be. You have to concede that if it's about a love affair, forget it. Absolutely. And again, that is why the process used by Judge Dowd in this case was appropriate and was proper because he did not combine sentencing and terrorism enhancement. He did not combine those two. If you concede that a love affair is not terrorism and trying to get them to withdraw from the G8 is terrorism, what would just wanting to become famous be? That would be over on the love affair side of the line, wouldn't it? Perhaps unless it was killing a political figure because you knew that killing a political figure... You're saying untied. Right, untied in this hypothetical. Untied to any political motivation would not be terrorism. It would be a crime of violence. Well, things like occupying Wall Street or trying to influence G8 wouldn't actually be a terrorism situation unless they were going to take some violence, would it? I mean, you have the right to protest Wall Street or anything like that, right? Yes, Your Honor. However, in this case, they bought police batons. They bought bulletproof vests, smoke grenades, and other items to throw at police that they intended to use to engage police and engage who they identified as government officials at those protests. So, again, they took an additional step beyond freedom of speech. They were preparing themselves, and the conversations that were presented to the district court were... I bet it's just protection while they're picketing or something like that. Well, no, Your Honor, because the conversations presented to the district court show that they intended to engage and that they intended to incite. So they were going beyond just marching. How much was Stafford part of that? He came on relatively late because he was in New York doing other activities at the time, but he made appearance by reference early on in the case, and then certainly he became a very active participant in the few days leading up. I have less than a minute. If there are no further questions, I will concede the rest of the time. Thank you very much. Thank you, Your Honors. May it please the Court, I'd like to go back to a couple points that opposing counsel made. First of all, Judge Seiler, you asked, can you transfer intent? The case law is very clear that you can't. If you look at Stewart and right upon which this court relied, you can't just transfer intent. There has to be direct evidence of what the defendant actually intended. In Stewart, for example, the defendant Ussery was not hit with the terrorism enhancement, despite that his other co-defendants were. Now, with respect to the evidence, the only evidence the government provided were Guantanamo Bay terrorism and invocation of the 1%. Now, as you said, Judge Rogers, we're not bound by Stafford's definition of what constitutes influencing or affecting the government, and we actually have evidence in the record as to what Stafford believed the Occupy protests actually meant. He believed that they had nothing to do with government influence, but rather were things like feeding the homeless, establishing community gardens, and what I would just call good citizenship-type things. Now, he testified as to that in the trial on June 13th of 2013. I'll ask you a question because you don't have much time, and I'm struggling over this issue. The Occupy comments don't add too much one way or the other. In my mind, I can't speak for my colleagues. What looks like terrorism, and what most people who look at this case are going to think is that terrorism or not, is that he's blowing up a bridge which interferes with commerce. So you're trying to stop commerce. There's a way in which, in a common-sense taking, that's interfering with government. That's not literally interfering with government, although the government maintains the bridge so that there can be commerce. If you're shooting a judge that might be for a personal reason, the observer could easily say, that might be for a personal reason. What can be the personal reason for blowing up a bridge? I see my time is up. I'd like to give you two cases, Your Honor. What's the personal reason for blowing up a bridge? I don't want cases right now. I want a rationale for why blowing up a bridge isn't terrorism because it sure seems like terrorism in a common-sense term. The reality, Your Honor, is we don't know. We don't know, but we got some indication that it's what people normally want to blow up, and those people who are normal who blow up bridges are doing it for terroristic reasons. It's hard to imagine why you would blow up a bridge for some other reason. But the important point, Your Honor, is it is the government's burden to say why the bridge was blown up, what Stafford's specific intent was. It is their obligation to bring forth evidence. The reality is... You don't think if they blew up a government building that wouldn't be evidence in itself that they were trying to interfere with the government? Not necessarily. That's striking. I mean, they got to come up with more evidence when they're blowing up a federal office building or trying to plant a bomb in the Pentagon or something? You need more evidence than that, that they're trying to interfere with government activity? Judge Rogers, I'm not aware of any case that held that simply targeting a building in and of itself is sufficient to establish... You got any case that says that it isn't, though? I mean, because it sure seems like it would be. Unless there's something else, you could have some other evidence that they were trying to interfere with the love affair by blowing up the Pentagon, I suppose. But you'd think that the facts would kind of lean that way unless there were some other facts showing the other way. I'm not citing cases. I'm just saying how it would appear to the ordinary observer. Your Honor, if we look at one of the things Stafford said, the government harps on the fact that he talked about bombing, quote, other targets, namely a McDonald's. I'm talking about this target, though. And I'm disputing... But the point is, if we look at him talking about other targets, if we really assume that those are true plots, as the government claims, you don't target a McDonald's to influence governmental conduct. You target McDonald's because you're mad at corporate America. And so if you really take that threat seriously, as the government seems to, because they cite it repeatedly in their brief, and if you take his comments about the 1% seriously, it really seems to be a lashing out at corporate America and private moneyed interests. It is an evidence that talks... Or it is an evidence as to influence in government conduct. So thank you very much, Your Honor, and thank you for the indulgence on time. We see that you were appointed under the Criminal Justice Act,  Thank you, Your Honor. The case will be submitted. Please call the next case.